initiated that the position has been specifically disclaimed on three separate occasions. But look, you need inurement for your reduction to practice, right? And so there must be inurement to someone who did something. And isn't that the shortcoming that the board found in your argument that you didn't prove the conception of Charat with respect to this invention? With respect, Your Honor, that goes directly to the issue of what constitutes the actual reduction to practice in this case. It is our position that the actual reduction to practice was the testing to determine if the invention did work for its intended purpose. And that testing was conducted by Mr. Charat and persons working in his direction back inside. And that was demonstrated in the test results. The conception issue arises from this misunderstanding. But don't you still have to show that you invented the product that was tested to meet the test for reduction to practice? Your Honor, in this situation where conception was not challenged, where it's explicitly stated by the petitioner that conception is not at issue. The conception of the patented invention, but in order to antedate the other reference, you have to prove two things. You have to prove that you invented it at a prior point in time and that you either tested or used it for its proper purposes, right? That's the test for reduction in practice. So part of that is that when you're showing the reduction to practice at a prior point in time, you're the one that invented it at that prior point in time. With respect, Your Honor, there are two methods under 131 to establish priority. The first is conception and due diligence, which also mean reduction to practice. And the second is showing an actual reduction to practice. But part of that actual reduction to practice still is that you constructed an embodiment or invented it, or otherwise somebody did it at your direction, isn't it? Yes, Your Honor. In this case, it was shown that the embodiment was shown to work for its intended purpose. But your failure is, at least in the board's view, is that you didn't show that you constructed that embodiment. With respect, Your Honor, we believe that the board's analysis was error because in it had been established. You think you don't have to show to anti-data reference that you constructed the embodiment? In this case, Your Honor, it was no challenge to conception. I'm not sure why you keep saying no challenge to conception. It's your burden of proof on anti-dating the other reference. It's not their burden to disprove it, right? Well, with respect, Your Honor, it's our burden of production. The burden of proof was always on the petitioner. Sure, but – well, really, even when you're trying to say that the obvious misreference they brought forward, you've anti-dated it because you invented something before? I don't want to get tied up into it because I don't think it matters whether we call it burden of proof or production here. But when we're talking about you pointing out an earlier reduction to practice, isn't it your burden on that? Your Honor, our burden is to establish an actual reduction to practice. Part of which is you invented the embodiment and then used it or otherwise tested it. Your Honor, in this case, there was no need to go into conception. There was no challenge. There has never been a challenge or an allegation that there was derivation, that anything that Mr. Schropp was the actual inventor. It simply wasn't an issue. And it was only because the court, perhaps believing that the reduction to practice comes through the assembly of the PCE board, which it did not. But it still wasn't an actual reduction to practice because it did not establish that the device would work for its intended purpose. It was a complex electronic device that required proving that it would work for its intended purpose. All that was needed was an establishment of an actual reduction to practice. Someone else could have conceived of it. As long as the named inventor, who is assumed to be the named inventor, had an actual reduction to practice, that should be sufficient under 131 and under the law that applies 131. Does that mean you reduced it to practice? No, Your Honor. The law is clear that that type of reducing to practice someone else's invention or your competitor's invention would not constitute an actual embodiment. Because you have to show that you constructed that embodiment at the prior point in time. I think what is troubling me here, and I get what you're saying. I think this is a very close and difficult case. But you get the benefit of the patent date for constructing this or for creating this invention. But in order to predate it, you can't just say we had it in our possession. You have to show that you invented it prior to that date and give us specific evidence. And the board found that evidence to be insufficient. And with respect, Your Honor, the board there, because they did not consider the appropriate weight that should be applied to the oath and declaration of Mr. Sherratt. As the Supreme Court instructs us in Smith v. Goodyear, dental vulcanite, cited in the party's briefs. And to raise an issue of conception. Let me make it clear. When you say they didn't give the proper weight to the board, to the declaration of Mr. Sherratt. Now you're talking about we're reviewing this under a substantial evidence standard. No, Your Honor. Our position is that they should never have gone into the issue of conception. Because the issue of conception wasn't appropriately in front of this board. Isn't that inherently a part of the reduction to practice analysis? You don't just show that it was used by the patentee prior to the priority date. You have to show that you somehow invented it. You constructed an embodiment that embodied the patent. Your Honor, it is more than just constructing an embodiment. It's showing that you tested it to determine that it would work for its intended purpose. Look, there's no doubt you tested it. I mean, that's right. If that was your only test, that you had possession of a device that did this patent and you tested it. I think your November whatever test are sufficient. But I don't think that's all the test. I think the second part of the test in our precedent is to show that you're responsible for constructing that embodiment. In order to get the benefit of that earlier priority date. With due respect, your Honor, it is our position that the actual reduction of practice by the testing with conception not being challenged in this case was sufficient to establish Mr. Sherratt's entitlement to the earlier priority date. Especially in a case like this where the petitioner would have been expected to raise the issue of conception. And in three separate incidents, twice at the hearing and once in their pleading, said specifically conception is not at issue in this proceeding. The board did more than merely step into the shoes of the petitioner here. The board put on a new pair of shoes and adopted arguments that had been rejected by the petitioner. And therein lies the fault. And furthermore, your Honor, there is a theme of error which we believe runs through the board's decision and also the office's briefing. Which is that there was an actual reduction of practice by the construction of the PCB layout by Concept Electronique. That was not an actual reduction of practice. That was a construction of a printed circuit board putting together components in accordance with the instructions provided by Mr. Sherratt. But even if they came from someone else, that would not constitute an actual reduction of practice. Because there's no showing of... Is this a problem that there's no corroboration of Sherratt's role in the instructions that were passed to CDE? Your Honor, with respect, that was the board's conclusion. But we disagree. We believe that there was sufficient corroboration to establish Mr. Sherratt's role with respect to the conception, particularly in light of this Court's most recent, albeit non-presidential, decision of Intellectual Ventures II versus Motorola Mobility and the appropriate use of the rule of reason in this type of analysis. Is it possible to narrow the issue to the... It looked as if nobody disputed that the reduction of practice took place. The question was whether or not it inured to this applicant. Is that right? Because of the difficulty of the chain, the emails and the report going back and forth, and what the revision three has compared with the earlier revision and so on, was there a question as to the fact as to what was reduced to practice or only whether this applicant, this inventor, got the benefit of it? With respect, Your Honor, there certainly was contested evidence regarding what was actually reduced to practice. The position of NSC technology was that the pages of the test report that discussed the binary port to the control circuit, in this case the PIT process or modulating the antenna of the inductive circuit, established a reduction of practice. The reduction of practice being a method claim that you had to show you had binary ports of the control circuit that were otherwise modulating. And the particular pieces that did that would not be particularly relevant. The inurement issue only arises because of the Board's sua sponte assertion of the conception issue, which was not briefed by the parties and wasn't appropriately before the Board in the opinion of NFCT. Was it explored before the Board that I think, at least it was established, that there are different standards for interference priority and Rule 131 priority? Is that a distinction that you wish to draw here? That is a distinction, Your Honor, and that is a distinction we drew particularly in the briefing relying on Your Honor's concurrence in the Laurel Fairchild case. And our position there is simply that the Rule 131 and the law in antedating a reference is more appropriately applied than the interference rules and the highly detailed interference rules. And while it is true that 131 is not one of the specifically incorporated statutory provisions, neither are the interference provisions. And we would suggest that the Court and the Board be guided by, frankly, a rule of reason analysis as to which way to go. But it is not an interference proceeding. Okay. Let's hear from the office.  May it please the Court. The Board correctly recognized here that when the argument of actual reduction to practice is predicated on some third-party activity, the issue of enormous comes into play. And particularly here I would be. But nobody disputed that that activity took place. Nobody seemed to dispute when it took place. I gather there may have been some question as to what was done when. Is that right? The dispute wasn't so much who did what or even when. The question was, well, a little bit of who did what, and more particularly, to take it broadly, actual reduction to practice requires the prototype, an actual physical thing that then gets tested. There's no dispute that the testing here was not done by Concept Electronique, the fabricator. The testing that was relied upon below by NFCT was done by NFCT. But isn't the law clear that an inventor can retain somebody or request someone else to conduct tests on his behalf? Well, they could, but that's not the third-party issue here. This is not an issue like, for example, in Cooper Technologies. Well, that's the question of enormous, isn't it? Enormous is the general concept of somebody else has done something, and I need to rely on the benefit of that activity. So enormous is a general legal concept. It's a fact-specific application of it. In Cooper it was Goldfarb had done some testing, and Cooper needed to rely on that particular testing. But the board's opinion here relied on lack of corroboration. Correct. Now, if one has an interference, A versus B, each one is contending for priority. And A says, I did it, and B says, I did it. And so there needs to be corroboration. Here there isn't another party contending for ownership. The second party, the contractor, isn't claiming ownership. Obviously, someone conceived this. There's evidence that Sherratt did. There's a patent issued in Sherratt's name. And why should we require the same amount of corroboration in this case when there isn't any opponent contending for inventorship as there is in an interference? Well, I think the reason why is this situation is more akin to an interference. I see, too, there isn't two parties attempting to claim the same invention. But this is also not the scenario in the ex parte situation where Rule 131 applies, and you have the language of Rule 131 that says an inventor can file a declaration saying actual reduction of practice or conception followed by diligence to reduction to practice. So we're definitely not in that world. We are more in the world a la Perfect Surgical where this Court said in the context of the AIA that principles of 102G apply. And that's consistent with what this Court has said in patent infringement, which would be more analogous as well. In that scenario, you don't have two parties attempting to establish that they or the other gets to claim the invention. You have one party that's claimed an invention and then another that is, in essence, trying to avoid it. So the principles of 102G apply there. This Court made clear... But all I have to show is reduction of practice. Well... Under 131. So under... Isn't that right? Or else conception and diligence. You don't even have to show an actual reduction of practice. Well, part of the reason for that, Your Honor, is in typical 131 scenario, it's the inventor who has reduced it to practice. And when we say that, we mean... Well, why isn't this a simple 131 scenario? They're just saying I did this work, I reduced this to practice, I hired these people, they built the board, before the effective date of the reference. Without going into whether if it's the same invention, whether 131 serves or not, because that's a very curious situation, it seems to me. Well, leaving aside the fact that Rule 131 by regulation does not apply in an AIA context. There's no interference, so what else do you have? Well, I have the law of this Court under perfect surgical that says the law of 102G applies in the AIA context. And what we also have is the law of this Court where it says the law of 102G, in essence, crosses proceedings, including patent infringement. And what we also have is the board... And we also have the law of this Court, which says that the rules are different for 131 at interference priority. Well, we have... There is the discussions in Laurell Fairchild and in Ray Moore and Echo Meyer, if I'm getting that correctly, that does recognize that there is a distinction between the two scenarios. But the distinctions between the two scenarios largely derives from the ex parte versus adversarial nature. But look, who else invented it? Sherrod invented it. Well, what the board explained was at Appendix Pages 23 to 25 why it was inquiring into conception. It said at the first full paragraph on Appendix 24, quote, if a person conceives of an invention and proceeds himself or herself actually to reduce that invention to practice, the actual reduction to practice is sufficient evidence of conception at least as of the date of the actual reduction to practice. The problem here is we have a crucial step in the theory of actual reduction to practice that was not done by Sherrod. Everybody agrees it was done by Concept Electronique, who is a third party. That moves us outside the realm of, in essence, assumed conception, and conception becomes relevant. That's what this Court said in Cooper. That's what this Court said in Genentech. So... And doesn't the conception arise from Sherrod having sent it to the contractor? Well, part of... Is that what he did? Part of his theory of conception, if you look at the patent owner response where they argued about conception at Appendix Pages 265 to 266, Sherrod explains, or I should say, NFCT argued relying on Sherrod's declaration that Inside Technologies is where Sherrod worked. They were working on developing the product or the item inside, and they got to a point where they said, all right, we're ready to make a prototype. So we commissioned Concept Electronique to generate the PCB layouts. They generate the layouts. They send it to us for approval. The layout is crucial. It shows, quote, a number of important features of the M2OH1 design. Concept Electronique makes the prototype. Now we're on Page 266. They sent it to us. We tested that prototype. So that is why the Board is... Why isn't that test date alone sufficient for a reduction to practice? Why isn't the test date... There's a November test date where they... And I understand there may have been some disagreements about whether it actually did the patent or not, but that effort was reached, so let's assume it did. Why isn't that enough? Because it's testing... This is not an instance where the testing is by a third party, right? It's testing by the... That is correct. So when the patentee has in possession the device that was at least partially constructed at its instruction, and it tested it and it embodies the patent, why isn't that significant to at least get that November date priority? Potentially it could be what the Board found was that there were discrepancies and gaps in the evidence as to what was actually tested and what they got back from Concept Electronique. This is at pages appendix 29 to 30. So in your view, this is really just a failure-approved case. There's not... I mean, as far as I can tell, there's not any real dispute about who invented this. The product that issued this patent, but you just think that they didn't show enough evidence to get an earlier priority date. It is perhaps a fine line, because the Board did not... And this goes back to the questions about... That might be an easier result to accept if all we had was the instructions, and they fabricated it, and they got it back. But when they actually have it, they did more programming on it than they tested it, and putting aside disputes about whether it embodied the patent, when they had it, that seems to me pretty close to a reduction in practice. Well, again, the problem here we have is that prototype, which is a crucial part of the reduction-to-practice theory, is not there. So there needs to be some evidence that what's reflected in that prototype reflects the invention that they conceived of. You're talking about the difference between the Revision 2 and the Revision 3? That's part of it, Your Honor. That's part of the gap. But then all you would have is diligence. Eventually, it came up with what's embodied in the application. So even if there were changes between Revision 2 and Revision 3, that wouldn't affect the continuity, would it? Well, two things, Your Honor. They didn't actually rely on the date of the testing. They relied on the November 98 date. They didn't actually get into the subsequent date of the date of February 1998. But you just said that there were discrepancies, so you want us to look at the difference between what might have happened in that period. Is that right? Well, not so much. The reason why that's relevant, Your Honor, is per Judge Hughes's question about whether the testing could be relevant evidence of actual reduction-to-practice. That wasn't a theory that they relied upon below. And then you have these problems of what perhaps that date could have been. It's not a theory that was explored below. We do have these evidentiary discrepancies that the Board cited between Exhibit 2012 as the test report. But does it matter when there is, I think, an unchallenged reasonable continuity of effort? Well, again, there was no argument about diligence in this case. Okay. So it's not an issue that the Board reached or explored. So why do we care what was in Revision 2? Well, the reason we care about Revision 2 is because that's for, and it was actually Revision 3, Exhibit 2013, which was the wiring confirmation diagram that NFCT relied upon below to demonstrate that what was tested was what they had actually came up with before they asked Concept Electronique to fabricate. And the problem you had is you have these differing numbers. You have on the facts diagram, asking Concept Electronique to make the prototype that has M210H. Then you have on the test report, it actually has M210H2. And then you have on the wiring testing, which comes later, Revision 3, and it's two months after the testing of the fabrication. So you have all these sort of discrepancies, and what are they actually working on? Is it always the same thing? Has it been modified? And that's important here because, again, the theory of reduction to practice here was based on the prototype that Concept Electronique made. So if there was further messing around with it, that was, A, not a theory that they relied upon, and, B, it speaks to whether or not their theory of actual reduction to practice was sufficiently proven and corroborated. And there's one other thing that I think is important to remember here, which is the board sort of found two related but separate problems with the evidence here. At appendix pages 26 to 30, the board found insufficient corroborated evidence of conception prior to November 1998, which was the date that NFCT advanced. Then at pages 30 to 31, they found sort of additionally that there was insufficient evidence that Concept Electronique fabricated the design provided by the inventor. They're related because part of the theory of relief here for NFCT was based on what they had Concept Electronique do. But that's corroboration, isn't it? That is the first one... Question of corroboration. It is a question which is a rule of reason analysis, and for the reasons we've explained in our brief, the board went through each piece of evidence and said, look, here's the problem I have with it. I've got notebooks that aren't signed or witnessed. I've got inventor testimony that's not corroborated by anybody but the inventor's notebooks. But you don't have a competitor here. You don't have anyone else. That is correct, Your Honor, but I... And Sherrod isn't someone from nowhere. He was an involved party, if not the principal party, and a named inventor. He is a named inventor, Your Honor. And it's not to say that his testimony isn't relevant or can't be considered. The problem with it is when it is the inventor, it needs to be corroborated. This Court recognized imperfect surgical... But why... I know the notebooks are not dated the way you want them to, but why... I mean, if they were... Why do they need to be dated? The rule of reason just looks at the whole picture of the evidence to suggest that the inventor's testimony is corroborated. And it seems like there was sufficient evidence on the record to show, here's instructions he gave to the contractor. Here's the back and forth. Here's his notebooks. There were emails and the like. And the whole picture given together seems to suggest that they were working on what he told them to do and that it ultimately ended up in a working prototype that amply dates the reference. Well, respectfully, Your Honor, I mean, for example, the reason why we need the notebooks to be dated, signed, witnessed, somebody that can testify as to when Sherratt made them is because they're Sherratt's notebooks. So NFCT is trying to use Sherratt's notebooks to corroborate Sherratt's testimony. And so there's got to be some independent verification because then otherwise he's just bootstrapping his own testimony. And this Court explained, for example, in NTP, that that kind of activity was not sufficient enough under the law. Well, aren't the notebooks sufficient to show what he was working on? Right, but we don't know... And then the emails back and forth, which are dated, are sufficient to show the time period. I confess, I'm not sure. I know there's the fact sheet from... Maybe that's what I'm... Okay, I was going to say, I'm not aware of any emails. Part of the problem we have as well, Your Honor, is we don't know exactly what NFCT sent to Concept Electronique or what they sent back. We just have the facts cover sheet. This was something the Board explained at Appendix Page 29. We don't know what it is that NFCT was giving Concept Electronique or what, other than sending back the prototype, what Concept Electronique was communicating back to them. So maybe independently, one of these problems wouldn't be sufficient enough to reach the conclusion that the Board reached, but you've got four or five of these things and they add on and they add on and under the rule of reason, the Board said, I just don't have sufficient corroborated evidence for you to demonstrate your actual regression to practice. Therefore, who gets the patent? Well, exactly. I mean, you're right. This is not an interference. It's not like the PTO is going to walk out the door with a patent. But, you know, the reason why we care and I think the reason why Perfect Surgical recognized that the law of 102G applies is we are in the more adversarial setting akin to patent infringement. And that law of 102G is what should apply. Well, you know, the two things that maybe the office considered, maybe not. One is here we have a situation, a possible conflict that might have involved itself in an interference. So here we go back to Rule 131 to look for conception, reduction of practice, priority, issues that were eliminated in the interference context. Difficult questions, which brings me to an even tougher question. What in the world is the office doing in this case? The petitioner withdrew, refuses to defend its win. The district court case was dismissed. It's over. What is the interest of the office in this conflict? There's no Article III conflict between the office and this applicant. There's no, even if the office prevails and there's an estoppel, it only affects this petitioner who's already withdrawn. Why is the office squandering its time and talent in this debate after the petitioner withdrew? Your Honor, the statute gives the office the right to intervene in any appeal. The statute can be interpreted as saying anything the office wants to do, they can do. I doubt very much that when the director was authorized to intervene that that meant in anything that anybody felt like intervening in, but in a situation where you were defending some jurisdictional issue. Here we have a expensive, heavily contested contest, appeal continuing, withdrawn in the district court. Nobody seems to care except the office. Why should it matter? The office cares because in large part this was a challenge to the procedures of the office. And the office has an interest in assuring that its board and the manner in which the board is applying the AIA receives at least a counterpoint consideration. And this court in many instances in which cases where the petitioner has dropped out has asked the PTO to participate or whether we will participate. Now admittedly we do not have an order like that in this case, but the director has exercised her statutory authority to participate in the appeal, and that is largely why. It is to protect the integrity of the US PTO office's proceedings and the statute. Okay, we'll see. Thank you. Thank you, Your Honor. Mr. Abboud. Thank you, Your Honor. Three points, if we might, Your Honor. First off, we think it's important to note that inurement typically focuses on the relationship between the parties and not on what was actually communicated. And that is primarily because inurement typically involves whether or not the appreciation of the benefits obtained or whether or not the knowledge that it worked for its intended purpose is what is going to inure it back to the inventor. Rarely, if ever, does inurement seem to involve who made the prototype that was ultimately tested and resulted in an actual reduction to practice. In this case, there was prima facie evidence of conception that was never contested. But you're not relying on a theory of conception and due diligence, are you? No, Your Honor, because we have an actual reduction of practice. Unlike perfect surgical, for example, there's not an issue of due diligence with a reduction of practice after the critical date. The critical date post-dates the documents, the events, the testing, everything in this case. So due diligence, we believe, is not a relevant consideration. We also point that there is no substantial evidence, or any evidence of any kind, that anybody else but Mr. Chirot conceived of the invention. And while we recognize that there are some discrepancies in the evidence, discrepancies that one might realistically expect when one is looking at an invention made in France 17 years ago from people who are no longer employed by the company, we believe that a close analysis of the evidence under the appropriate rule of reason shows that Mr. Chirot and persons working at his direction had an actual reduction of practice in November 1998, and therefore the Sears reference is not prior art, and that the Board, when it introduced the issues of conception and inurement, ran afoul of this Court's direction and exceeded its authority because, as the Court stated in Magnum Oil II, that authority is not so broad that it allows the PTO to raise, address, and decide on patentability theories never presented by the petitioner. That's particularly true in a case like this, where not only the petitioner never raised them, but they explicitly disavowed them on multiple occasions. Thank you. Thank you both. Case is taken under submission.